UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION (PLANO)

| | |
|---|---|
| NORMAN EASTWOOD,<br>    *Plaintiff,*<br><br>v.<br><br>WILLOW BEND LAKES HOMEOWNERS ASSOCIATION, INC.,<br><br>    *Defendant.* | Civil Case No.: 4:20-cv-00400 |

**VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTIONS**

PROCEDURAL AND FACTUAL BACKGROUND

1. Concurrent with the filing of this Verified Application for Temporary Restraining Order and Preliminary and Permanent Injunctions ("Application"), Plaintiff Norman Eastwood ("Plaintiff" or "Mr. Eastwood") filed his original Complaint with this Court.

2. Mr. Eastwood's Complaint complains of Defendant Willow Bend Lakes Homeowners Association, Inc. ("HOA")'s discrimination against him Based on Mr. Eastwood's disability in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2), by denying Mr. Eastwood's request for a reasonable accommodation that is immediately necessary to provide Mr. Eastwood an equal opportunity to use and enjoy his dwelling, which action is defined as discrimination pursuant to 42 U.S.C. § 3604(f)(3). The Complaint is incorporated into this Application by reference as if fully set forth herein.

3. Mr. Eastwood seeks a temporary restraining order, and upon notice and hearing, preliminary and permanent injunctive relief based on the following facts:

4. Plaintiff, Mr. Eastwood, co-owns (as co-trustee of a revocable trust) and resides in a single-family home with his wife and co-trustee, Dorothy Eastwood, at 5213 Mariners Drive, Plano, Texas 75093 (the "Property").

5. Mr. and Mrs. Eastwood have lived at the Property since 1997.

6. The Property is situated within and is a part of the Defendant HOA's Willow Bend Lakes Community in Plano, Texas.

7. Restrictive covenants, interpreted and enforced by the Defendant HOA, govern all properties in the HOA community, including Mr. Eastwood's Property.

8. The restrictive covenants that apply to Mr. Eastwood's Property require, among other things, that all construction or modifications on properties within the community must be approved by the HOA's Board of Directors (or a committee designated by the HOA's Board of Directors).

9. The Willow Bend Lakes Community contains a lake known as the "Spillway Lake" which is surrounded by homes in varying proximities to the lake.

10. Mr. Eastwood's Property backs up to the Spillway Lake, and his rear property line abuts the water's edge of the Spillway Lake.

11. The HOA has an easement for, and maintains, a walking/jogging path intended for the exclusive use of community members that runs through Mr. Eastwood's backyard which essentially divides his backyard into two approximate halves (the "Path").

12. One half of Mr. Eastwood's backyard runs from the back of his house to the south edge of the Path. The other half of Mr. Eastwood's backyard runs from the north edge of the Path to the water's edge of Spillway Lake.

13. Some years ago, Mr. Eastwood constructed an HOA-approved, 4-foot, black, wrought-iron fence on the Property which enclosed the portion of his backyard that runs from the

back of his house to the Path. At the time, Mr. Eastwood was content to leave the other half of his backyard unfenced because his neighbors were aware and respectful of each other's property lines, and trespassers on the unfenced portion of Mr. Eastwood's backyard were an anomaly.

14. Over the last few years, that situation changed as members of the general public began using the Path, and they, along with some members of the HOA community, began routinely exiting the Path and going onto the unfenced portion of Mr. Eastwood's backyard to sit, nap, picnic, fish, feed water fowl, exercise and relieve their dogs, and otherwise enjoy his lakeside backyard.

15. Mr. Eastwood believes this area of his backyard is particularly appealing to passersby for the same reason that it is his favorite area of his home to use and enjoy; because it is a long, wide, relatively flat area that although flanked by trees at its ends, is open and gets direct sunlight on a large area of lawn that runs down to the water's edge of Spillway lake. This area is in fact the only portion of Mr. Eastwood's backyard that gets direct sunlight and has been therapeutic in that regard for Mr. Eastwood's physical and psychological recovery from cancer.

16. The near constant presence of strangers on the unfenced portion of his backyard led Mr. Eastwood in mid-2019 to request permission from the HOA to construct a 4-foot high, three-sided, black, wrought-iron fence around the back half of his backyard (identical to that of his existing fence) that would leave open the property line of his yard along the water's edge, but prevent people from readily leaving the Path to go onto his backyard.

17. Over this same period, Mr. Eastwood was being treated for cancer.

18. In June of 2019, the HOA denied Mr. Eastwood permission to construct the proposed fence based on the HOA's interpretation of the restrictive covenants that govern some aspects of the use of Mr. Eastwood's Property. Soon thereafter state court litigation concerning the

HOA's interpretation of the restrictive covenants ensued. That lawsuit remains pending in a Collin County District Court.

19. At or around mid-March 2020, Mr. Eastwood started to become aware that the novel corona virus that causes Covid-19 (the "Virus") had entered and was rapidly spreading across the United States, including in Collin and surrounding Texas counties.

20. Over the following few weeks, as more information became known about the Virus, its highly contagious nature, its potentially deadly effect on those with underlying health conditions, specifically including those with a compromised immune system, and the Virus' ability to be transmitted by a significant percentage of asymptomatic carriers (potentially even including dogs and cats), Mr. Eastwood became aware that his cancer and the chemotherapy treatments' effect in suppressing and compromising his immune system put his life and health at grave risk if he were to contract the Virus.

21. Mr. Eastwood's compromised immune system substantially limits his ability to engage in the major life activity of being able to be in close proximity to persons unknown to him because of the risk to his life and health that persons carrying a transmittable infection, and in particular, the Virus, pose.

22. In light of the emerging information about the Virus and in consultation with his treating physician, Mr. Eastwood determined that he had to stop using the unfenced portion of his backyard for his enjoyment and its therapeutic effect in his recovery from cancer because of the near constant presence of strangers in his backyard and the risk that presented to his life and health because of his disability.

23. Mr. Eastwood, in consultation with his treating physician, determined that because of his susceptibility to an infection, particularly that of the Virus, Mr. Eastwood could not have an equal opportunity to use this area of his home for enjoyment or its therapeutic effect in his recovery

from cancer unless he were able to keep off of his Property strangers who could be carrying a communicable infection, particularly the Virus.

24. Knowing that the HOA's interpretation and enforcement of the restrictive covenants would not allow Mr. Eastwood to construct a fence around the unfenced portion of his backyard, on April 20, 2020, Mr. Eastwood made an urgent written request to the HOA, in accordance with the Fair Housing Act, for a reasonable accommodation to the HOA's interpretation and enforcement of the restrictive covenants that would allow him to construct a fence that would help keep strangers off the unfenced portion of his backyard so that he could have an equal opportunity to enjoy and use this area of his home again for his therapeutic benefit without risking his life or health. A true and correct copy of Mr. Eastwood's request for accommodation is attached to this Application as Exhibit 1 at p. 1.

25. Mr. Eastwood's request for accommodation was accompanied by a letter from his treating physician attesting to his disability, its substantial interference with a major life activity, and the nexus between his disability and the need for the requested accommodation so that Mr. Eastwood could exclude persons from Mr. Eastwood's property. A true and correct copy of that letter is attached to this Application as Exhibit 1 at p. 2.

26. Mr. Eastwood's request for accommodation was also accompanied by three recent date and time-stamped photographs of different groups of strangers gathered on the unfenced portion of Mr. Eastwood's backyard. True and correct copies of those photographs are also attached to this Application as Exhibit 1 at pps. 3-5.

27. On May 5, 2020, the HOA Defendant denied Mr. Eastwood's request for accommodation in violation of the Fair Housing Act. A true and correct copy of the HOA's letter denying Mr. Eastwood's request for accommodation is attached to this Application as Exhibit 2.

28. The HOA's denial of Mr. Eastwood's request for reasonable accommodation does not provide any legal justification for denying the request. Instead, the letter misinterprets the Fair Housing Act and concludes that it does not apply to single family homes; does not apply to persons who live in the home if the home is owned in the name of a trust; and does not apply to Mr. Eastwood because he purchased the home years ago. See Exhibit 2. Each of these asserted bases for denying Mr. Eastwood's request for accommodation are directly contrary to the Fair Hosuing Act.

29. The HOA's denial of Mr. Eastwood's request for accommodation was also based on the patently false assertion that all other members of the community have a right to go onto and use Mr. Eastwood's backyard.

30. Lastly, the HOA's denial of Mr. Eastwood's request for accommodation was also based on the assertion that a restrictive covenant prohibits fences from being constructed on an easement that the HOA falsely contends burdens the unfenced portion of Mr. Eastwood's backyard. Such an easement does not exist on the unfenced portion of Mr. Eastwood's backyard. Nonetheless, the accommodation requested would address that restrictive covenant, and the HOA provided no reason for the denial of an accommodation to that restrictive covenant.

## REQUEST FOR INJUNCTIVE RELIEF

31. Plaintiff re-alleges paragraphs 1-30.

32. Mr. Eastwood's cancer and resulting compromised immune system is a disability that substantially limits a major life activity. See Exhibit 1 at p. 2 (physician's letter). Mr. Eastwood is therefore a handicapped person as that term is defined by the Fair Housing Act, 42 U.S.C. § 3602(h).

33. Mr. Eastwood made an urgent request to the Defendant HOA for a reasonable accommodation to its rules, policies, practices, or services to allow him to fence the unfenced

portion of his backyard because such an accommodation is necessary so that Mr. Eastwood can have an equal opportunity to use and enjoy this area of his dwelling.

34. Without the accommodation, Mr. Eastwood is effectively excluded from an area of his dwelling that he has a right to use and enjoy, and that is therapeutic to his recovery from cancer. His health weighs daily in the balance. The risk to his life and health of a constant flow of strangers on an area of his dwelling that Mr. Eastwood needs to be able to access and use cannot be overstated, and the potential damage to this health, once done, cannot be undone.

35. The Defendant HOA discriminated against Mr. Eastwood on the basis of his handicap in violation of 42 U.S.C. § 3604(f)(2)(A) by refusing to make reasonable accommodations in its rules, policies, practices, or services when such accommodations may be necessary to afford Mr. Eastwood equal opportunity to use and enjoy his dwelling, in violation of 28 U.S.C. § 3604(f)(3)(B).

36. Mr. Eastwood is entitled to request this relief because he is an "aggrieved person" as defined by the Fair Housing Act, 42 U.S.C.§ 3602(i)(1) as he is a "person who claims to have been injured by a discriminatory housing practice."

37. Mr. Eastwood seeks a temporary restraining order and preliminary and permanent injunctions pursuant to 42 U.S.C. § 3613(c) which provides that:

> In a civil action under subsection (a), if the court finds that a **discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate,** any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

TEMPORARY RESTRAINING ORDER

38. Plaintiff re-alleges paragraphs 1-37.

39. Mr. Eastwood requests the Court grant a temporary restraining order, *ex parte*, if necessary, because of the emergent nature of the need for relief. Mr. Eastwood's undersigned counsel delivered a digital copy of Mr. Eastwood's Complaint and this Application to the HOA's counsel one hour prior to filing them with the Court.

## PRAYER

**WHEREFORE,** Plaintiff respectfully requests the following injunctive relief against Defendant:

(a) A temporary restraining order, enjoining Defendant, Defendant's subsidiaries, Defendant's agents, employees, and successors, and all other persons in active concert or participation from fining Plaintiff or otherwise interfering with Plaintiff's construction and maintenance of a three-sided fence that encloses Plaintiff's property along his property lines, is open along the water's edge of Spillway Lake, and does not cross or otherwise interfere with use of the Path;

(b) Upon notice and hearing, a preliminary injunction enjoining Defendant, Defendant's subsidiaries, Defendant's agents, employees, and successors, and all other persons in active concert or participation from fining Plaintiff or otherwise interfering with Plaintiff's construction and maintenance of a three-sided fence that encloses Plaintiff's property along his property lines, is open along the water's edge of Spillway Lake, and does not cross or otherwise interfere with use of the Path; and

(c) Upon notice and final hearing, a permanent injunction enjoining Defendant, Defendant's subsidiaries, Defendant's agents, employees, and successors, and all other persons in active concert or participation from levying fines against Plaintiff

or otherwise interfering with Plaintiff's construction and maintenance of a three-sided fence that encloses Plaintiff's property along his property lines, is open along the water's edge of Spillway Lake, and does not cross or otherwise interfere with use of the Path; and

(d)  Grant Plaintiff such other and further relief as may be just and proper.

Dated: May 13, 2020

Respectfully submitted,

**THE MILES LAW FIRM, PLLC**

//s// Melissa A Miles
By: MELISSA A. MILES
Texas State Bar No. 90001277
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
Office: (972) 270-4393
Email: melissa@mileslaw.org
**ATTORNEY FOR PLAINTIFF,
NORMAN EASTWOOD**

CERTIFICATE OF SERVICE

I, the undersigned attorney for Plaintiff, hereby certify that on May 13, 2020, the foregoing pleading was served on Defendant's counsel, Mr. Mark Smith, via email to mark.smith@tbjbs.com.

/s/ Melissa A. Miles
Melissa A. Miles

## VERIFICATION

STATE OF TEXAS

COUNTY OF COLLIN

I, Norman Eastwood, after being duly sworn, hereby swear and affirm that I am qualified and authorized to make this affidavit; that I have read each and every factual allegation of the foregoing Application; that the factual allegations are within my personal knowledge and are true and correct; and that the exhibits attached to the foregoing Application, marked as Exhibits 1 and 2, are the originals or true and correct copies of the originals of those documents.

*Norman Eastwood*

Subscribed and sworn to before me this __13__ day of May, 2020.

JOSSETTE M. GRIFFIN
Notary Public, State of Texas
Comm. Expires 05-16-2020
Notary ID 126522011

*Jossette M. Griffin*
Notary Public